**UNITED STATES BANKRUPTCY COURT
DISTRICT OF MASSACHUSETTS
EASTERN DIVISION**

| | |
|---|---|
| In re:<br><br>IDL DEVELOPMENT, INC.,<br><br>    Debtor. | Chapter 7<br>Case No. 18-14808-CJP |

**MEMORANDUM OF LAW IN SUPPORT OF THE MOTION OF CORINNA VON SCHÖNAU-RIEDWEG AND EBUR INVESTMENTS, LLC TO COMPEL AND TO ENFORCE THIS COURT'S ORDER OF AUGUST 20, 2020**

Pursuant to Federal Rules of Bankruptcy Procedure 7033 and 7037, and Massachusetts Bankruptcy Local Rule 7037-1, Corinna von Schönau-Riedweg and EBUR Investments, LLC ("Movants") file this Memorandum of Law In Support of the Motion to Compel and to Enforce This Court's Order of August 20, 2020 (the "Motion") in connection with the Supplemental Objections and Receiver's Responses to Interrogatories Propounded By Creditors Corinna von Schönau-Riedweg and Ebur Investments (the "Responses"). The 15 interrogatories at issue (the "Interrogatories") were served on John K. Hannan (the "Putative Receiver") on August 28, 2020 pursuant to this Court's Proceeding Memorandum and Order of August 20, 2020 (the "Order").

The Putative Receiver's Responses are deficient in several critical respects. Some are simply non-responsive; others lack detail to the point of being useless. Rather than providing more meaningful answers to the Interrogatories, the Putative Receiver, when pressed by Movants, precipitously withdrew the transfer of CET's claims in an effort to moot the Objection and preclude follow-up on his deficient responses.[1] However, counsel for Movants were authorized by the Court to serve the Interrogatories, not merely to resolve the Objection, but

---

[1] Upon receipt of these filings, the Court entered a 10/9/2020 order noting: "THE PENDING OBJECTION [DKT. NO. 463] IS MOOT. THE CLAIM TRANSFERS WITH RESPECT TO PROOFS OF CLAIM NOS. 5 AND 6

1

rather to resolve a broader issue of concern to the Court and the Trustee: whether the Putative Receiver was duly authorized to act on behalf of CET and could participate in transactions that would be subject to approval by this Court.[2]

Not only does the precipitous withdrawal of the transfers itself heighten legitimate concerns about the Putative Receiver's authority, but it now appears that several of the interrogatory answers provided by the Putative Receiver concerning CET's purported connections to the State of Texas are simply false. Responses by Texas A&M University and the University of Texas at Austin to Texas Public Information Act (Texas Government Code Section 552.001 *et seq.*) requests served by Movants on those Texas state institutions appear to confirm that alleged CET connections to those institutions that are touted in answers to Interrogatories Nos. 12-15 simply do not exist.

In light of these disturbing developments, Movants request that this Court order the Putative Receiver to promptly cure the most significant deficiencies (detailed below) in the responses to the Interrogatories. Further, Movants request that the Court authorize them (i) to serve production requests relating to the interrogatory answers provided by the Putative Receiver; and (ii) to conduct a deposition of the Putative Receiver concerning those interrogatory answers and the documents to be produced by the Putative Receiver.

## FACTUAL BACKGROUND

**The Interrogatories and Responses.** Due to issues that were of independent concern to the Bankruptcy Court (see detail *infra* at 5-6), by Order dated August 20, 2020, the Bankruptcy

---

THAT WERE OBJECTED TO HAVE BEEN WITHDRAWN." (Doc 489). This 10/9/2020 order did not withdraw the Court's Order of August 20, 2020, nor did it deem the discovery served pursuant to that Order moot.

[2] The Putative Receiver's authority or lack thereof, implicates multiple proceedings including this bankruptcy case and litigation the Putative Receiver has caused to be filed in the State of Texas. See, *Continuum Energy Technologies, LLC v. Corinna Von Schonau-Riedweg et al.*, Case No. 2020-35763 (District Ct. 125th Judicial District-Harris County Texas).

Court directed the Movants to serve 15 interrogatories upon the Putative Receiver. That Order (Doc. 477) stated, in pertinent part:

> THE HEARING IS CONTINUED AND WILL BE RESCHEDULED IN CONNECTION WITH A POSSIBLE RULE 9019 MOTION THAT MAY BE FILED BY THE TRUSTEE OR BY FURTHER ORDER OF THE COURT. WITHIN TEN 10) DAYS ATTORNEY O'CONNELL SHALL SERVE UP TO 15 INTERROGATORIES ON THE RECEIVER. THE RECEIVER SHALL HAVE 14 DAYS TO RESPOND AND SHALL SERVE THE RESPONSES ON BOTH ATTORNEY O'CONNELL AND ATTORNEY MADOFF.

The Interrogatories were served on August 28, 2020. A copy of those Interrogatories is attached as Exhibit A to the Affidavit of Philip A. O'Connell, Jr. in Support of the Motion of Corinna Von Schönau-Riedweg and Ebur Investments, LLC to Compel and Enforce Compliance with this Court's Order of August 20, 2020 (the "O'Connell Affidavit" or "PAO Aff.") which is filed herewith.[3] On September 15, 2020, the Putative Receiver served his initial responses, which were manifestly incomplete, but raised a potential waiver concern. Movants immediately followed up, addressed the waiver concerns, and then repeatedly sought the prompt service of complete responses.[4] Finally, on Thursday, September 24th, the Putative Receiver served the Responses. Exhibit B.

**Delays in the Meet-And-Confer Process.** The Supplemental Responses were deficient. Those deficiencies were detailed in the September 29, 2020 letter of Philip A. O'Connell, Jr. to Attorney Kellie Fisher. Exhibit C. After sending that letter (by email), Mr. O'Connell followed up with Ms. Fisher's office, repeatedly seeking a meet-and-confer teleconference. After indicating by email that counsel for the Putative Receiver would be unable to confer on Wednesday, September 30th and Friday, October 2nd, Mr. Jeffrey Piampiano indicated (by email) that "[he would] plan to give you a call one way or another sometime on Monday afternoon

---

[3] All exhibit references in this Motion are to the exhibits to the O'Connell Affidavit.
[4] The Putative Receiver took the position that the Interrogatories amounted to more than 15 interrogatories. (Ex. B). A review of the Interrogatories belies that contention.

3

[October 5th]." Monday came and went without such a call. Mr. O'Connell then contacted counsel for the Putative Receiver by email early on Tuesday, October 6, 2020. Counsel for the Putative Receiver finally agreed to speak at 4:30 p.m. on October 6th. Exhibit D.

**The Precipitous Withdrawal of the Transfers.** Early on the afternoon of October 6th, the Putative Receiver made two filings (Docs 485-486). Each consisted of a 1-page "Notice of Withdrawal of Transfer of Claim," one relating to each claim at issue.[5] These filings were made at 1:43 p.m. and 1:46 p.m., respectively, about two-and-three-quarter hours before the meet-and-confer teleconference that the Putative Receiver's counsel had finally agreed to schedule for 4:30 p.m. of that day. Prior to the filings, counsel for the Putative Receiver had never discussed such action with counsel for Movants. The filing itself provides no explanation for this action, nor did counsel for the Putative Receiver offer any explanation.

**Use of The Filings to Subvert the Meet-and-Confer Process.** At 2:10 p.m., Mr. Piampiano sent Mr. O'Connell an email stating: "Hi Phil--we have withdrawn the transfer documents, so your objection and any discovery attendant thereto is moot." At 2:20 p.m., Mr. O'Connell responded with an email stating:

> Jeff, This certainly convinces me that the Putative receiver has something to hide and is very concerned about having my clients' discovery properly responded to. As to whether it moots the discovery, that is another question. The Court has expressed an interest in the truth of these matters and the real authority of a party before it. If anything, this may heighten the Court's concern about these issues. See Exhibit D.

**The October 6th Meet-And-Confer Teleconference.** Consistent with Mr. Piampiano's prior commitment, at about 4:30 p.m. on October 6th, Mr. O'Connell called him and spoke with him for about five minutes. Mr. O'Connell advised him that Movants did not view their

---

[5] Each Notice stated: "NOTICE IS HEREBY GIVEN that the Transfer of Claim Other Than For Security with respect to Claim Number [Number] [specific identification of each claim] is hereby withdrawn. John K. Hannan, in his capacity as receiver, respectfully requests that claims register reflect that Claim [number] is still held by Continuum Energy Technologies, LLC."

4

discovery as moot. Mr. O'Connell made it clear that he was prepared to address the substance of the deficiencies in the responses. Mr. Piampiano said that he was not prepared to do so. PAO Aff., ¶18.

Mr. O'Connell pointed out that there was an Order authorizing the service of the 15 interrogatories and that that Order remained in effect. He told Mr. Piampiano that if the Putative Receiver did not wish to comply with that Order, the Putative Receiver needed to move the Bankruptcy Court to lift the Order, but that Movants were not releasing the Putative Receiver from his obligations under that Order. PAO Aff., ¶18.

Mr. O'Connell also told Mr. Piampiano that Movants viewed this precipitous withdrawal of the transfers as disavowing the Putative Receiver's power. Mr. O'Connell asked counsel for the Putative Receiver whether he viewed the receivership as not valid. Mr. Piampiano did not respond to that question. Mr. O'Connell then asked Mr. Piampiano pointedly whether the Putative Receiver was foreswearing any rights to these claims forever. Mr. Piampiano said he did not know. At that point, Mr. Piampiano requested that Mr. O'Connell put his concerns regarding these matters in a letter. Mr. O'Connell agreed to do so. PAO Aff., ¶18. Mr. O'Connell sent that letter to Mr. Piampiano on October 8, 2020. Exhibit E. After sending that letter, Mr. O'Connell continued to follow up with Mr. Piampiano. Then, on October 15, 2020, Mr. Piampiano advised Mr. O'Connell by e-mail that his firm "had no authority to further engage" concerning the Interrogatories. Exhibit F.

**The Discovery Is Clearly Not Moot.** It is clear that these issues are not moot. Mere withdrawal of the transfers does not eliminate the concerns of the Court expressed regarding the Putative Receiver's authority to engage in transactions affecting the bankruptcy estate. During the August 20, 2020 hearing, immediately before the Bankruptcy Court reached its decision, it had the following exchange with Mr. Madoff:

> "COURT: …In terms of getting more information that would be beneficial to the Trustee in assessing whether he is negotiating with a party that has authority, Mr. Madoff, would you like more information in response to the issues that have been raised?
>
> Mr. MADOFF: I think that would be helpful, just so I know I'm not wasting my time but, yeah, I think it would be helpful…." Exhibit G (Tr. at 22:3-10).

The Bankruptcy Court then concluded:

> [Movants] have raised issues that [the] Court is *sua sponte* **interested in relating to the integrity of the process and the validity of the assignment** and the authority of the receiver. I'm going to permit Mr. O'Connell to serve some interrogatories, up to 15 interrogatories on the receiver that requests information that answers some of the questions that have been raised about the nature of the underlying debt and the other issues that have been raised regarding the nexus to Texas and information about who Oak is and why they're owed money by CET. That will help get information on the table for Mr. Madoff. Exhibit G. (Tr. at 22:19-23:5) (emphasis supplied).

In light of this, it is clear that this has gone well beyond the issue of the validity of the two claim transfers and, since at least August 20th, has involved confirming or disconfirming the authority of the Putative Receiver generally. Indeed, in the case of *In re Am. Hous. Found*, 09-20232-RJL 2015 WL 6690025, (Bankr. N.D. Tex. Nov. 2, 2015), previously cited by Movants, the transferring party argued that, because of a similar gambit, a notice of claims transfer was "moot." (Emphasis supplied) Id. at *4. However, the Court held that:

> There is no argument made that [the claim] assignments can, under the law, be cast aside or ignored; ***and there is no explanation how, under the law, the Court's authority can be invoked to declare that an undisputed act of assigning a claim, which has significant legal ramifications, can be declared moot***. An action is moot if it has no practical significance. Black's Law Dictionary (10th ed. 2014). *Id.* (Emphasis supplied).

6

That court ruled that "all parties that need to know will know who is holding the claim. This is as basic as it gets. The parties to the dispute here, however, have managed to muddle this simple procedure …" *Id.*

**Enforcement of This Court's Order of August 20, 2020 Is Particularly Important Given False Answers to Interrogatories 12-15 Concerning CET Activity in Texas**. The receivership from which the Putative Receiver claims to derive his authority was initiated collusively in the State of Texas. To Movants' knowledge, CET, a Delaware limited liability company long-headquartered in Fall River, Massachusetts, had never had any connection to Texas. Several of the Interrogatories (Nos. 12-15) inquired about CET's connections to Texas. While the Putative Receiver's answers conspicuously failed to identify any contracts by date, contract number or contract title, the Putative Receiver's answers to those interrogatories plainly asserted that CET had material research contracts with Texas A&M University ("Texas A&M") and had been involved in negotiations concerning similar activity with the University of Texas at Austin ("UT"). Specifically:

- The Response to Interrogatory No. 12 stated, in pertinent part: "CET's only ongoing research *is being conducted* in the State of Texas with Texas A&M University. The research is occurring at Texas A&M, under the control of professors and research assistants at Texas A&M, and *IP is owned or controlled jointly by CET and Texas A&M University*."

- The Response to Interrogatory No. 13 stated, in pertinent part: "CET has conducted and is conducting research and development in the State of Texas related to *intellectual property that appears to have significant value, and that is owned and controlled by CET and Texas A&M University*."

7

- The Response to Interrogatory No. 14 stated, in pertinent part: "Based on information obtained from CET personnel and records, ***intensive work began at Texas A&M in 2018***, but initial investigations were conducted even earlier."

- The Response to Interrogatory No. 15 stated, in pertinent part: "[S]ignificant intellectual property has been developed by CET in the State of Texas in conjunction, ***and under an agreement with, Texas A&M University***. License agreements covering and/or related to such projects have been executed with NASA and Tamer Aerospace. ***Agreements to participate in the research and the projects are under negotiation with the University of Texas at Austin. Both the University of Texas and Texas A&M are Texas state institutions and are considered agencies of the State of Texas***."  (Emphasis supplied.)

Movants, who had never heard of such relationships, served requests on Texas A&M and UT pursuant to the Texas Public Information Act (Texas Government Code Section 552.001 *et seq.*), a Texas analog of the federal Freedom of Information Act. Exhibits H and I. Neither institution had any documents reflecting any relationship with CET.[6] Exhibits J and K. Indeed, the single document that was unearthed by Texas A&M (Exhibit L), which does not appear to involve CET, confirms that Texas A&M must have searched back at least until 2012 and to have done a broad search for documents including the word "Continuum."[7]

Given the expansive nature of the requests, and the fact that the requests tracked language in the interrogatory answers, all this strongly suggests that the information provided in

---

[6] Neither institution indicated that it was withholding documents for any reason and the single document produced by Texas A & M appeared to have no redactions

[7] That document was a Revised Purchase Order in the amount of $6,500.00 dated December 7, 2012 reflecting a transaction with an entity referenced as "CONTINUUM," located in Santa Clara, California. Exhibit M. There is no indication that that entity had any connection to CET.

8

the answers to Interrogatories 12-15 (quoted above) is simply false.[8]

## MATERIAL DEFICIENCIES IN THE SPECIFIC INTERROGATORY ANSWERS

### Interrogatory No. 4

For each factual assertion cited in Your response to Interrogatory No. 2[9], identify each Document that supports Your contention that the factual assertion is incorrect, incomplete or otherwise subject to dispute.

### OBJECTIONS:

A.  The Receiver objects to this request on the ground that, while framed as a single interrogatory, it is essentially a separate interrogatory for each separate, disputed factual allegation in the Objection. As such, and in accordance with the Court's order authorizing these interrogatories and Fed. R. Civ. P. 33(a)(1), which is made applicable to this contested matter under Fed. R. Bankr. P. 7033 and 9014(c), which prohibits subparts of interrogatories, each discrete subpart of interrogatory no. 4 shall be treated as a separate interrogatory for purposes of the 15-interrogatory limit set forth in the Scheduling Order).

B.  The Receiver further objects to these interrogatories on the ground that they exceed the number of interrogatories authorized by the Court, as informed by Fed. R. Civ. P. 33(a)(1), which is made applicable to this contested matter under Fed. R. Bankr. P. 7033 and 9014(c).

C.  The Receiver objects to the interrogatories comprising Interrogatory No. 4 on the ground that such interrogatories are overbroad and unduly burdensome insofar that they request a recitation of all "facts" underlying such denial. *See Machinery Solutions, Inc. v. Doosan Infracore America Corp.*, 323 F.R.D. 522 (D.S.C. 2018) (interrogatory seeking "all facts" was unduly burdensome); *See also Frechette v. Gaudette,* 2019 WL 1509592, at *3 (D. Me. Apr. 5, 2019) (explaining that " 'contention interrogatories' are overly broad and unduly burdensome on their face if they seek 'all facts' supporting a claim or defense, such that the answering party is required to provide a narrative account of its case").

D.  The Receiver objects to the numerous interrogatories comprising Interrogatory No. 4 on the ground that the request for identification of all "documents" underlying the

---

[8] If the Putative Receiver believes that the responses of these Texas state institution were somehow in error, it should be simple enough for the Putative Receive to produce copies of the relevant contracts.

[9] Interrogatory No. 2 requested the following information: "With respect to the statement in footnote 1 on page 3 of the Reply of Receiver John K. Hannan To Creditors Corinna von Schönau-Riedweg and Ebur Investments, LLC's (I) Objection to Recognition Of Transfer of Claims Other Than For Security From Transferor Continuum Energy Technologies, LLC To John K. Hannan In His Capacity as Receiver Of Continuum Energy Technologies, LLC, And Substitution Of Said Receiver For Continuum Energy Technologies, Inc. [sic] And (II) Reservation of Rights Regarding Discovery dated August 7, 2020 (Doc 471) (the "Receiver's Reply") that "[t]he receiver disputes many of the factual assertions in the Objection," identify with specificity each factual assertion in the Objection that the "Receiver disputes" by quoting the same."

Receiver's response on the ground that it calls for disclosure of information falling within the scope of the attorney-client privilege and/or the work-product doctrine.

E. The Receiver objects to the interrogatories comprising Interrogatory No. 4 on the ground that each such interrogatory is unduly burdensome insofar as it improperly seeks to have the Receiver prepare the Objector's case.

**RESPONSE:**

**As to Interrogatory 4, Subparts I and VIII (thirteenth interrogatory):** All pleadings filed and notices sent by me in the Texas proceeding in which I was appointed as Receiver.

**As to Interrogatory 4, Subparts II and III (fourteenth interrogatory):** All proofs of claims filed by CET in the IDL case, and the transfers of claims filed by me with respect to those proofs of claims.

**As to Interrogatory 4, Subparts IV, V, VII, IX, X (fifteenth interrogatory):** I do not have possession or control of any such documents; other documents are a matter of public record but are not generally in my possession or control.

**As to Interrogatory 4, Subpart VI (sixteenth interrogatory):** CET's corporation formation documents and documents filed with the Delaware Secretary of State, and certain documents received from CET in my custody or control.

**Movants' Position:**

"Identify (with respect to a Document)" is specifically defined in Definition No. 9 as meaning "to state, to the extent known, the (i) type of document (e.g. E-mail, letter, memo, invoice); (ii) general subject matter; (iii) date of the Document; and (iv) author (s), addresses (s) and recipients." Here, the Putative Receiver's responses to Interrogatory No. 4 fail to identify any documents with specificity.

**Interrogatory No. 5**

For each factual assertion cited in Your response to Interrogatory No. 2, identify each Person with knowledge Concerning that factual assertion.

**OBJECTIONS:**

10

A.     The Receiver objects to these interrogatories on the ground that they exceed the number of interrogatories authorized by the Court, as informed by Fed. R. Civ. P. 33(a)(1), which is made applicable to this contested matter under Fed. R. Bankr. P. 7033 and 9014(c). As such, because the Receiver had already answered 15 separate interrogatories through its answers to the subparts of the compound requests in Interrogatories 1 - 4, the Receiver is not obligated to respond to these interrogatories, and will not do so.

B.     The Receiver objects to the interrogatories comprising Interrogatory No. 5 on the ground that they are overbroad, and not reasonably calculated to lead to the discovery of admissible evidence in this action, and which have no bearing on the bankruptcy case underlying this contested matter.

**RESPONSE:** Subject to, and without waiving the foregoing, the Receiver points out that his earlier responses, and the interrogatories themselves, include references to persons who may have knowledge as to truth or inaccuracy of one or more of the factual allegations addressed herein.

**Movant's Position:**

Definition No. 13 states that "Identify (with respect to a Person)" means "to give, to the extent known, the Person's full name, present or last known address, telephone number, email address, and, when referring to a natural person, additionally, the present or last known place of employment." The Putative Receiver's response here merely refers to earlier responses and fails to identify any such Persons related to each factual assertion cited in Interrogatory No. 2. The response also fails to provide any of the requisite contact information to the extent known by the Putative Receiver.

**Interrogatory No. 8**

Identify each Communication You have had with any Person Concerning Iron Oak and/or CET**.**

**OBJECTIONS:**

A.     The Receiver objects to these interrogatories on the ground that they exceed the number of interrogatories authorized by the Court, as informed by Fed. R. Civ. P. 33(a)(1), which is made applicable to this contested matter under Fed. R. Bankr. P. 7033 and 9014(c). As such, because the Receiver had already answered 15 separate interrogatories through its answers to

11

the subparts of the compound requests in Interrogatories 1-4, the Receiver is not obligated to respond to these interrogatories.

B.    The Receiver objects to the interrogatories comprising Interrogatory No. 8 on the ground that they are overbroad, and not reasonably calculated to lead to the discovery of admissible evidence in this action, and which have no bearing on the bankruptcy case underlying this contested matter.

**RESPONSE**: Subject to, and without waiving those/that Objection(s), which is/are expressly preserved, as stated above I have had communications with every member listed on the current capitalization table of CET. I have had communications with Iron Oak LLC's Counsel. I have had communications with various attorneys for CET including Jeff Piampiano, Kellie Fisher, Todd Sullivan and Neil Hartzell. I have had communications with the bankruptcy trustee in the IDL bankruptcy, David Madoff

**Movants' Position:**

The Agreed Judgment entered against CET in Massachusetts was entered in favor of Iron Oak. The activities of the Putative Receiver appear intended to benefit Iron Oak. Definition No. 5 states that: "Identify (with respect to a Communication)" means "to identify each Person who was a party to the Communication, to state the location of each of those Persons at the time of the Communication, to state the method of communication (e.g. in-person, telephonic, email, videoconference), to state the date when the Communication occurred, and to state the substance of the Communication to the fullest extent possible." The interrogatory was plainly directed to "each Communication" that the Putative Receiver has had concerning Iron Oak and CET, and not for the Putative Receiver to merely identify Persons with whom the Putative Receiver has communicated. This response is therefore completely non-responsive.

**Interrogatory No. 12**

Identify with specificity (by nature of the personal property, specific location of the personal property, the amount or number of items of such personal property, and the dates of ownership by CET) all personal property of any kind (including, without limitation, cash, funds

12

held on account, securities, equipment, furniture, supplies and business records) which, while owned, in whole or in part, by CET, has been located within the State of Texas.

**OBJECTIONS:**

A. The Receiver objects to these interrogatories on the ground that they exceed the number of interrogatories authorized by the Court, as informed by Fed. R. Civ. P. 33(a)(1), which is made applicable to this contested matter under Fed. R. Bankr. P. 7033 and 9014(c). As such, because the Receiver had already answered 15 separate interrogatories through its answers to the subparts of the compound requests in Interrogatories 1 - 4, the Receiver is not obligated to respond to these interrogatories.

B. The Receiver objects to the interrogatories comprising Interrogatory No. 12 on the ground that they are overbroad, and not reasonably calculated to lead to the discovery of admissible evidence in this action, and which have no bearing on the bankruptcy case underlying this contested matter.

**RESPONSE:** Subject to, and without waiving those/that Objection(s), which is/are expressly preserved, as pointed out above, the scope of my authority is limited by the order to intangible personal property. I therefore have no knowledge, or reason to know, of tangible personal property that might be owned by CET. Substantial intangible property is located in or tied to the State of Texas including the very substantial claims against citizens and residents of the State of Texas.

CET's only ongoing research is being conducted in the State of Texas with Texas A&M University. The research is occurring at Texas A&M, under the control of professors and research assistants at Texas A&M, and IP is owned or controlled jointly by CET and Texas A&M University.

**Movants' Position:**

The Putative Receiver qualifies his answers by pointing out that "the *scope of my authority is limited by the order to intangible property.*" (Emphasis supplied.) There is no basis for such a limitation. The Putative Receiver either knows something or he does not. Neither the Interrogatories nor the discovery rules permit him to simply decline to respond based on when

13

and how he obtained the knowledge. If the Putative Receiver has any knowledge -- personal or otherwise -- from any source that is responsive to the interrogatory, he should so state.[10]

Here, this is not a matter of semantics. The principal concern is not how the Putative Receiver has been conducting his receivership, once commenced; it is how he came to be appointed and the validity of that appointment. If he is excluding responsive information pre-dating his appointment, he is excluding exactly the kind of information that is of greatest interest and importance.[11]

**Interrogatory No. 13**

Identify with specificity any Operations of any kind that have been conducted by CET within the State of Texas.

**OBJECTIONS**:

A.  The Receiver objects to these interrogatories on the ground that they exceed the number of interrogatories authorized by the Court, as informed by Fed. R. Civ. P. 33(a)(1), which is made applicable to this contested matter under Fed. R. Bankr. P. 7033 and 9014(c). As such, because the Receiver had already answered 15 separate interrogatories through its answers to the subparts of the compound requests in Interrogatories 1 - 4, the Receiver is not obligated to respond to these interrogatories.

B.  The Receiver objects to the interrogatories comprising Interrogatory No. 13 on the ground that they are overbroad, and not reasonably calculated to lead to the discovery of admissible evidence in this action, and which have no bearing on the bankruptcy case underlying this contested matter.

**RESPONSE**: Subject to, and without waiving those/that Objection(s), which is/are expressly preserved, so far as such information is within the scope of the receivership, CET has conducted and is conducting research and development in the State of Texas related to intellectual property

---

[10] The Putative Receiver has not taken the position that he is somehow protecting from disclosure solely information that is privileged or otherwise lawfully protected from disclosure.

[11] The Putative Receiver claims that he is "not part of any 'scheme,'" which presumably relates to the following assertion in the Objection: "The Putative Receiver cannot lawfully receive the Claims, as he has been appointed collusively and for illegitimate purposes, and the transfer would be in furtherance of a scheme to unlawfully create jurisdiction over the affairs of CET in the State of Texas..." Oddly, the Putative Receiver does not address the prior assertion that "he has been appointed collusively and for illegitimate purposes." We are left to speculate as to whether this omission was purposeful.

that appears to have significant value, and that is owned and controlled by CET and Texas A&M University.

**Interrogatory No. 14**

With respect to any Operations identified in Your response to the preceding interrogatory, identify with specificity (to the day, month and year) the time period during which those Operations were conducted.

**OBJECTIONS:**

A.      The Receiver objects to these interrogatories on the ground that they exceed the number of interrogatories authorized by the Court, as informed by Fed. R. Civ. P. 33(a)(1), which is made applicable to this contested matter under Fed. R. Bankr. P. 7033 and 9014(c). As such, because the Receiver had already answered 15 separate interrogatories through its answers to the subparts of the compound requests in Interrogatories 1 - 4, the Receiver is not obligated to respond to these interrogatories.

B.      The Receiver objects to the interrogatories comprising Interrogatory No. 14 on the ground that they are overbroad, and not reasonably calculated to lead to the discovery of admissible evidence in this action, and which have no bearing on the bankruptcy case underlying this contested matter.

**RESPONSE:** Subject to, and without waiving those/that Objection(s), which is/are expressly preserved, that information is not needed for me to discharge my obligations under the Turnover Order. Based upon information obtained from CET personnel and records, intensive work began at Texas A&M in 2018, but initial investigations were conducted even earlier.

**Movants' Position on Interrogatories No. 13 and 14:**

Definition No. 11 states that "Identify (with respect to Operations)" means "to state the nature of the activity conducted (e.g. mining, retail sales, warehousing, scientific research) and to identify the specific location(s) at which it was conducted."  Once again, the Putative Receiver's responses to Interrogatory Nos. 13 and 14 appear limited to within the scope of his receivership. As explained above, there is no basis for such a limitation.  The responses also appear to be incorrect. Neither Texas A&M University nor the University of Texas at Austin, when served

15

with a Texas Publication Information Act request, were able to locate any research agreements with CET.

**Interrogatory No. 15**

Identify with specificity any Transaction that CET has engaged in at any time that related in any way to the State of Texas, including, without limitation, any Transaction as to which any counterparty had its principal place of business in the State of Texas, which was entered into within the State of Texas, or which was to be performed, in whole or in part, within the State of Texas.

**OBJECTIONS:**

A.      The Receiver objects to these interrogatories on the ground that they exceed the number of interrogatories authorized by the Court, as informed by Fed. R. Civ. P. 33(a)(1), which is made applicable to this contested matter under Fed. R. Bankr. P. 7033 and 9014(c). As such, because the Receiver had already answered 15 separate interrogatories through its answers to the subparts of the compound requests in Interrogatories 1 - 4, the Receiver is not obligated to respond to these interrogatories.

B.      The Receiver objects to the interrogatories comprising Interrogatory No. 15 on the ground that they are overbroad, and not reasonably calculated to lead to the discovery of admissible evidence in this action, and which have no bearing on the bankruptcy case underlying this contested matter.

**RESPONSE**: Subject to, and without waiving those/that Objection(s), which is/are expressly preserved, as stated above, significant intellectual property has been developed by CET in the State of Texas in conjunction, and under an agreement with, Texas A&M University. License agreements covering and/or related to such projects have been executed with NASA and Tamer Aerospace. Agreements to participate in the research and the projects are under negotiation with the University of Texas at Austin. Both the University of Texas and Texas A&M are Texas state institutions and are considered agencies of the State of Texas.

**Movants' Position:**

Definition No. 15 defines "Identify (with respect to a Transaction) as meaning 'to identify each Person who was a party to the Transaction, the date on which the Transact on was entered into, the specific location(s) where the transaction was entered into, the title of any Document memorializing or purporting to memorialize the Transaction, the nature of the Transaction (e.g.

16

licensing of intellectual property), and the specific items that were exchanged or to be exchanged (e.g. $1 million cash payments for three forklifts.)" The Putative Receiver's response here is wholly insufficient and nonresponsive as it fails to provide the level of specificity required by the interrogatory and related definitions, including, but not limited to, identifying the date, the title of any document memorializing the transaction, or items that were exchanged or to be exchanged. This lack of specificity makes it difficult to confirm the accuracy of the responses as well as any Transaction's significance.

**Conclusion**. This Court authorized service of the Interrogatories to resolve concerns about the Putative Receiver's authority. The gambit of precipitously withdrawing the transfers of claims when that authority was being scrutinized can only heighten those legitimate concerns. The apparently false answers to Interrogatories 12-15 amplify the importance of enforcing the Court's Order of August 20, 2020. In light of the withdrawal of the transfers, in addition to compliance with the discovery it previously ordered, the Court and the trustee are entitled to answers to the following questions, which counsel for Movants posed in writing to counsel for the Putative Receiver (Exhibit E), but which the Putative Receiver has declined to answer (Exhibit F):

1. Is the Putative Receiver committing to not renewing his efforts to have the claims transferred?

2. Does the Putative Receiver accept that he lacks authority?

Respectfully submitted,

**Corinna von Schönau-Riedweg and
Ebur Investments, LLC**

By their attorneys,

/s/ *Philip A. O'Connell, Jr.*
Philip A. O'Connell, Jr. (BBO#649343)
Dentons US LLP
One Beacon Street, Suite 25300
Boston, MA 02108
Tel.:  (617) 235-6802
Fax.:  (617) 235-6899
philip.oconnelljr@dentons.com

Dated:  October 30, 2020

## CERTIFICATE OF SERVICE

I hereby certify that on October 30, 2020, a copy of the foregoing was filed electronically. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt. Parties may access this filing through the Court's CM/ECF system.

Respectfully submitted,

/s/ *Philip A. O'Connell, Jr.*

Jeffrey Piampiano and Kellie W. Fisher, on behalf of John K. Hannan, in his capacity as Receiver
jpiampiano@dwmlaw.com; kfisher@dwmlaw.com

Paula R.C. Bachtell on behalf of Assistant U.S. Trustee John Fitzgerald
paula.bachtell@usdoj.gov

Charles R. Bennett, Jr. on behalf of Debtor IDL Development, Inc.
cbennett@murphyking.com, bankruptcy@murphyking.com;imccormack@murphyking.com;ecf-ca5a5ac33a04@ecf.pacerpro.com

Roberto M. Braceras on behalf of Creditor Goodwin Procter LLP
rbraceras@goodwinprocter.com

Christopher M. Condon on behalf of Debtor IDL Development, Inc.
ccondon@murphyking.com, imccormack@murphyking.com;ecf-06e49f159ba0@ecf.pacerpro.com

Kathleen R. Cruickshank on behalf of Debtor IDL Development, Inc.
kcruickshank@murphyking.com, bankruptcy@murphyking.com; asavoia@murphyking.com;ecf-f3829d9f3bd3@ecf.pacerpro.com

Jeremy R Fischer on behalf of Counter-Defendant Continuum Energy Technologies, LLC et al.
jfischer@dwmlaw.com, sswander@dwmlaw.com

Jeffrey Piampiano and Kellie Fisher on behalf of Creditor Continuum Energy Technologies, LLC kfisher@dwmlaw.com, sswander@dwmlaw.com; jpiampiano@dwmlaw.com

John Fitzgerald
USTPRegion01.BO.ECF@USDOJ.GOV

Adrianne E. Fouts on behalf of Plaintiff Continuum Energy Technologies, LLC et al.
afouts@dwmlaw.com

Ian M. Rubenstrunk on behalf of Interested Party Charles Bridge
irubenstrunk@winthrop.com, tcooke@winthrop.com

William P. Weintraub on behalf of Creditor Goodwin Procter LLP
wweintraub@goodwinlaw.com

Anne J. White on behalf of Examiner Anne J. White
whitetrustee@demeollp.com

David B. Madoff on behalf of Trustee David B. Madoff
madoff@mandkllp.com, alston@mandkllp.com